

**FILED**

**NOV 26 2019**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

U.S. DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
COOK COUNTY, CHICAGO, ILLINOIS

1:19-cv-07790
Judge Edmond E. Chang
Magistrate Young B. Kim

**WILLIAM FAVRE SLATER, III**
1515 W. Haddon Ave. Unit 309
Chicago, IL 60642

    Plaintiff,

vs.

**SOREN P. SPICKNALL**
c/o ASKWHAI, Inc.
(at WeWork)
1 W Monroe St, 4th Floor
Chicago, IL 60603

And

**ILLINOIS INSTITUTE OF TECHNOLOGY**
c/o Dr. Alan Cramb, President
10 West 35th Street
Chicago, IL 60616-3793

And

**MICROSOFT CORPORATION**
~~c/o Satya Nadella, President & CEO~~
~~One Microsoft Way,~~
~~Redmond, WA 98052-7329~~

**Microsoft Midwest Headquarters**
Oakbrook Center
49 Oakbrook Center
Oak Brook, IL 60523

    Defendants.

TYPE:
LIBEL /
TORTIOUS INTERFERENCE WITH
BUSINESS RELATIONSHIPS/
INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS/

<u>**JURY DEMAND ENDORSED HEREON**</u>

---

## COMPLAINT

Plaintiff, William Favre Slater, III. (herein "Slater"), (hereinafter "Plaintiff"), by and through counsel, for his Complaint against the Defendants, Soren Spicknall ("Spicknall"), the Illinois Institute of Technology (IIT), Microsoft Corporation (Microsoft), and states the following:

### PARTIES AND INTRODUCTION

1. Plaintiff, Slater, was an Adjunct Professor and part-time W-2 Employee in good standing at the Illinois Institute of Technology in Chicago, IL, for more than 10 years. His employment was akin to being a contractor with no benefits, and was contingent based on receiving an appointment letter each semester, to appoint him to teach one or more IIT classes where he was needed as an adjunct faculty member in the IIT School of Applied Technology.

2. The Plaintiff has been a resident of Chicago, Illinois since December 1995, and presently resides at 1515 W. Haddon Avenue, Chicago, IL 60642.

3. The Plaintiff is the President and CEO of Slater Technologies, Inc., a Type S corporation in good standing and organized under the laws of the State of Illinois, and operating at 1515 W. Haddon Avenue, Chicago, IL 60642.

4. Upon information and belief. Mr. Soren P. Spicknall is an employee of AskWhai Corporation which is located at 1 W Monroe St, 4th Floor, Chicago, Illinois 60603. He is a Data Scientist working at AskWhai in artificial intelligence. Mr. Spicknall's Chicago residential address is unknown however his home address is Soren P. Spicknall, 7801 Bromley Rd. Bay Minette, AL 36507.

5. Upon information and belief, the Illinois Institute of Technology is a corporation incorporated by special legislative act of the laws of the state of Illinois and located at 10 West 35th Street, Chicago, Illinois 60616.

6. Upon information and belief, Microsoft Corporation is a corporation incorporated

under the laws of the State of Washington and headquartered at One Microsoft Way, Redmond, Washington 98052. Microsoft's Chicagoland Address: Microsoft Midwest Headquarters, Oakbrook Center, 49 Oakbrook Center, Oak Brook, IL 60523

7. Mr. Spicknall was a student at IIT who graduated in December 2018. While at IIT, was also a senior writer for Tech News, the campus newspaper of IIT, and also worked at the campus radio station.

8. During the most of the time Mr. Slater taught at the Illinois Institute of Technology, he taught classes to graduate students and undergraduates in the School of Applied Technology on technical topics in Data Center Architecture, Data Center Management, Data Warehousing, IT Project Management, Introduction to Computer Hardware and Operating Systems, Programming, and Web Development. Slater also worked at the university and outside the university engaged in activities to help support maintain the excellent reputation of the University, including participating in unpaid activities such as teaching free Judo and Self-Defense classes weekly at IIT's Keating Hall during Spring and Fall Semesters (2016 – 2018) and providing mentoring and career-development guidance under unpaid internships he provided to seniors and graduates of IIT in 2017 and 2018, usually meeting at the IIT campus Library on a weekly basis during the Summer and Fall Semesters.

9. Mr. Slater has never met Mr. Spicknall, and does not know him. While Mr. Slater worked at the Illinois Institute of Technology, he worked for Mr. Raymond Trygstad, Associate Director, who recruited him to work at IIT, and Dr. Robert Carlson, who is Dean of the School of Applied Technology.

10. Mr. Spicknall was employed at Microsoft Corporation from October 2017 – December 2018, as a Chicago Civic Tech Fellow.

11. Mr. Slater worked at Microsoft Corporation from March 2008 – October 2008, and managed the operations of the Microsoft Chicago Data Center, located in North Lake, Illinois.

12. Mr. Slater has been happily married to Ms. Joanna K. Roguska, since December 3, 2000. Today, she is a Sr. Web Developer at an Advertising company located in the John Hancock Center.

## THE DEFAMING OF WILLIAM FAVRE SLATER, III

13. On Tuesday, November 27, 2018, IIT's Tech News newspaper published an article titled, "It's ***Time to Fire Bill Slater, IIT's Adjunct Bigot***", in both the hard copy and on the Tech News website. The web location of this article, which has been up continuously since it was first published, is at https://technewsiit.com/its-time-fire-bill-slater .

14. Mr. Slater asserts that the content in the article is an undeserved series of vicious ad hominem attacks not only meant to get him fired from IIT, which did not happen (his teaching contract was simply not renewed again after the article was brought to the attention of the IIT Provost, Dr. Peter Kilpatrick and IIT President Alan Cramb), and that it was clearly meant to destroy his personal and professional reputation and to ensure that he would probably never work again. In the article, Mr. Spicknall falsely accused Mr. Slater of being a racist, a homophobe, and a transphobe. Mr. Spicknall also attacked and ridiculed Mr. Slater's website, his career accomplishments, his teaching, his political beliefs, and his social media postings on Twitter (http://twitter.com/billslater), LinkedIn (https://www.linkedin.com/in/billslater/), and Facebook (http:/facebook.com/billslater) .

15. Mr. Spicknall also set up an online public facing web-based survey to collect votes and comments for the IIT Provost, Dr. Peter Kilpatrick, to further his online campaign to get Mr. Slater fired. The survey, which also summarized the article published on November 27, 2018, collected 89

votes, this out of a campus student population of approximately 7500 students.

16. In November 2018 and December 2018, Mr. Spicknall also took his online campaign to get Mr. Slater fired at IIT to Social Media, both on Twitter and on Facebook, On Twitter, he brought attention to both his article and his survey and boasted that this was his attempt to get an IIT Professor fired. At the IIT Student Forum on Facebook, he added additional thoughts about Mr. Slater, and made additional attacks that were false and injurious to Mr. Slater's personal and professional reputation, even to the point of falsely alleging that Mr. Slater had targeted single female IIT students and offered to take them to dinner and pay for their meals. Clearly, attacks like this were meant to cause harm, suffering, and irreparable to Mr. Slater's personal and professional reputation and to his marriage.

17. Part of the irony in Mr. Spicknall's online campaign that was apparently permitted and supported by IIT, was that in 2016, a group of IIT's Staff and Students received the prestigious Nayar Prize in Chicago for their demonstrated accomplishments in a research and development project, Cyberbullying Early Warning and Response System, and subsequently published several quarterly reports announcing their progress and continued success in study and documenting of the ongoing cyberbullying phenomenon.

18. Mr. Spicknall published his article, his survey, and engaged in the alleged Social Media attacks while he was still an IIT student, prior to graduation from IIT, and while he was a Microsoft employee. He was in violation of both IIT's Student Conduct, Section 4, which explicitly prohibits discrimination and harassment, in speech, in writing, and in electronic form, and also Microsoft's Employee Code of Conduct, when he launched on this self-declared campaign to fire Mr. Slater from IIT.

19. Defendant Spicknall also instigated a campaign to collect, create, and publish defamatory pictures and statements about Plaintiff, both in Social Media (Facebook and Twitter) and in the form of flyers that were created electronically, printed, and published at many locations on the IIT Main

Campus. Again, Spicknall was in violation of both IIT's Student Conduct, Section 4, which explicitly prohibits discrimination and harassment, in speech, in writing, and in electronic form, and also Microsoft's Employee Code of Conduct, when he launched on this self-declared campaign to fire Mr. Slater from IIT.

20. Each of the three remaining times Plaintiff was scheduled to return to the IIT Campus to complete the fulfillment of his job duties, twice in December 2018, and once in January 2019, at the request of IIT School of Applied Technology Management Staff, IIT special Public Safety security officers were provided for his personal protection because threats of violence had been made against him as a result of the defamatory publications as well as defamatory flyers distributed on Campus and on Social Media, i.e. on Twitter and the IIT Student Forum on Facebook.

21. Mr. Slater, in an effort to do damage control, contacted both Microsoft and IIT Leadership (Dean of Students, Dr. Kathryn Stetts, the Provost's Office, Dr. Peter Kilpatrick, and the IIT General Counsel, Mr. Anthony D'Amato). Mr. Slater believes that after it was reported to Microsoft, Microsoft actually terminated Mr. Spicknall over the defamation incident because it was a violation of the Microsoft Employee Code of Conduct. However, the IIT Leadership that Mr. Slater contacted would do nothing to have the article and the survey removed from the Internet, and stated via phone that the article would remain posted at the IIT TechNews website indefinitely. Mr. D'Amato did offer in January 2019 to allow Mr. Slater to write a rebuttal article in the same format as Mr. Spicknall's article and stipulated that the rebuttal piece, if submitted for publication in TechNews and on the web, could contain no more words than Mr. Spicknall's article. After some careful consideration, Mr. Slater decided it would be a more prudent course of action to ignore this rebuttal publication offer and pass on it altogether.

22. In February 2019, Mr. Slater called one of his IIT bosses, Mr. Ray Trygstad, to discuss the situation with the alleged defamation by Mr. Spicknall, and explain a recent related news event

where a Covington, Kentucky Student, Mr. Nick Sandmann and his family are now suing the Washington Post and perhaps even CNN in the amount of $250 million for alleged defamation related to an incident where Mr. Sandmann was attacked in the media for wearing his red hat. During this conversation, Mr. Trygstad became very angry and stated that if Mr. Slater had similar intentions to sue IIT for defamation that it would severely and financially harm IIT and likely result in the loss of his own job, and that he found that to be "outrageous and unacceptable." Mr. Trygstad continued getting angrier and shouting until he abruptly hung up on Mr. Slater and they have not spoken since that February 2019 phone call.

### DEFENDANT SOREN SPICKNALL and the ILLINOIS INSTITUTE OF TECHNOLOGY FACILITATED, ENCOURAGED, AND PROMOTED THE ILLEGAL DEFAMATION

23. The Defendants' conduct, described herein, has resulted in severe and permanent economic damage as well as substantial distress.

### COUNT ONE
*(Libel)*

24. Plaintiffs reincorporate by reference all of the allegations of this Complaint as if the same were fully rewritten herein.

25. From on or about November 27, 2018 – December 31, 2018, Defendants Spicknall and IIT carried out a campaign to defame Plaintiff. Defendants have carried out their malicious campaign to permanently harm and damage the Plaintiff through publishing false statements of fact online, in hard copy in the TechNews IIT campus newspaper, and through posted statements in Social Media and also through circulating flyers which contained false statements of fact, through making verbal false statements of fact, and by other means of publication.

26. From on or about November 27, 2018 – December 31, 2018, Defendant Spicknall published on the flyers, Social Media and other means of publication, false statements of fact regarding

Plaintiffs, which include, but are not limited to, affirmative statements that Plaintiff is a racist, a homophobe, and a transphobe.

27. The Illinois Institute of Technology published defamatory statements against Plaintiff through its agents, which include, but are not necessarily limited to: Dr. Peter Kilpatrick, IIT Provost, and Dr. Kathryn Stetz, Dean of Students. Such agents were acting within the course and scope of their employment with the Illinois Institute of Technology at all relevant times, and the agents' acts were calculated to facilitate or promote the business, interests, and agenda of the Illinois Institute of Technology. The Illinois Institute of Technology encouraged the defamatory conduct and approved and ratified the conduct of its agents, and adopted those false statements as its own statements. These false statements were part of and fueled the Illinois Institute of Technology's campaign against Plaintiff.

28. Said written statements concerning the Plaintiffs are false and defamatory, they import a charge of an indictable offense involving moral turpitude or infamous punishment, they injure the Plaintiff's trade, business, or occupation, and they subject Plaintiff to public hatred, ridicule, or contempt.

29. Said written statements concerning the Plaintiff by Defendants IIT and Spicknall bring into question their competence and ability to manage a local business in the city of Chicago.

30. Said written statements were published with malice and were intended to injure Plaintiff's professional and business reputation and his personal standing within the community, or at a minimum, Defendants Spicknall and IIT were negligent when they made the disparaging statements.

31. Defendants Spicknall and IIT's statements constitute libel per se and therefore, Federal law presumes that Plaintiffs have suffered damages. Furthermore, as a direct and proximate result of Defendants' defamatory statements, Plaintiffs have suffered actual and special damages, including, without limitation, loss of business earnings, injury to their personal and business reputations, and

mental anguish and humiliation.

32. Defendants' conduct was performed with actual malice and/or reckless disregard of the Plaintiff's rights.

33. As a direct and proximate result of Defendants' actions, Plaintiff is entitled to judgment against Defendants, jointly and severally, in a sum in excess of $300,000.00 for compensatory damages, a sum in excess of $135 million for exemplary and punitive damages, to be determined at trial, injunctive relief, plus interest at the statutory rate per annum, attorneys' fees, costs of suit, court costs, and such other and further relief as the Court may deem just and proper.

## COUNT TWO
### (Tortious Interference with Contracts)

34. Plaintiff reincorporates by reference all of the allegations of this Complaint as if the same were fully rewritten herein.

35. Plaintiff had various contracts and business dealings with third-parties.

36. At all relevant times, Defendants Spicknall and IIT had knowledge of those contracts and business dealings.

37. Defendants Spicknall and IIT intentionally sought and/or procured the breach of those contracts and business dealings by the conduct described herein.

38. IIT's agents were acting within the course and scope of their employment with Illinois Institute of Technology at all relevant times, and the agents' acts were calculated to facilitate or promote the business, interests, and agenda of Illinois Institute of Technology. IIT encouraged the tortious interference and approved and ratified the conduct of its agents.

39. As a direct and proximate result of Defendants Spicknall and IIT's tortious interference, Plaintiff has been damaged in excess of more than $300,000.00, including his attorney fees and lost profits for the interference, to be determined at trial, and Defendants, jointly and severally, are liable

for those damages.

40. Defendants Spicknall and IIT's conduct was performed with actual malice and/or reckless disregard of the Plaintiff's rights, such that the Plaintiff should be awarded punitive damages against the Defendants in excess of $135 million, injunctive relief, plus interest at the statutory rate per annum, attorneys' fees, costs of suit, court costs, and such other and further relief as the Court may deem just and proper.

## COUNT THREE
### *(Intentional Infliction of Emotional Distress)*

41. Plaintiff reincorporates by reference all of the allegations of this Complaint as if the same were fully rewritten herein.

42. Plaintiff believes that Defendants Spicknall and IIT intended to cause emotional distress to Plaintiff William Favre Slater, III or should have known that their actions would result in serious emotional distress to these Plaintiff.

43. As a direct and proximate result of Defendants Spicknall and IIT's conduct, this Plaintiff has suffered great distress concerning the damage to his personal and professional reputation, economic welfare, community standing, ability to continue to employ hard-working members of the community, and fear of physical harm.

44. Plaintiff believes that Defendants Spicknall and IIT's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was utterly intolerable in civilized society.

45. Plaintiff believes that Defendants Spicknall and IIT's actions were the proximate cause of Plaintiff's psychological injuries and financial damages.

46. The mental anguish suffered by Plaintiff was serious and of a nature that no reasonable person could be expected to endure it.

**47.** As a direct and proximate result of Defendants Spicknall and IIT's actions, Plaintiff William Favre Slater, III is entitled to actual damages in an amount in excess of $300,000.00, to be determined at trial, and Defendants Spicknall and IIT, jointly and severally, are liable for those damages, and an award of reasonable attorney's fees against the Defendants Spicknall and IIT, jointly and severally, and injunctive relief, plus interest at the statutory rate per annum, costs of suit, court costs, and such other and further relief as the Court may deem just and proper.

**48.** Defendants Spicknall and IIT's conduct was performed with actual malice and/or reckless disregard of the Plaintiffs' rights, such that the Plaintiffs should be awarded punitive damages against the Defendants in excess of $135 million, plus attorneys' fees.

**49.** As a direct and proximate result of Defendants' trespass, Plaintiffs have been damaged in excess of $300,000.00, including their attorneys' fees and lost profits for the interference, to be determined at trial, and Defendants, jointly and severally, are liable for those damages. Defendants' conduct was performed with actual malice and/or reckless disregard of the Plaintiffs' rights, such that the Plaintiffs should be awarded punitive damages against the Defendants in excess of $150 million, injunctive relief, plus interest at the statutory rate per annum, attorneys' fees, costs of suit, court costs, and any other relief this Court deems just and equitable.

**50.** WHEREFORE, Plaintiff demand judgment against the Defendants, jointly and severally, in an amount in excess of $135 million, to be determined at trial, an award of punitive damages in excess of $135 million, to be determined at trial, injunctive relief, plus interest at the statutory rate per annum, attorneys' fees, costs of suit, court costs, and any other relief this Court deems just and equitable.

William Favre Slater, III  
1515 W. Haddon Ave., Unit 309  
Chicago, IL 60642  
773 - 235 - 3080 - Home Office  
312 - 758 - 0307 - Mobile  
312 - 275 - 5757 – FAX  
slater@billslater.com  
United States of America

## JURY DEMAND

Plaintiff hereby demand, pursuant to _____, that a jury be impaneled to try all issues contained herein.

                                                William Favre Slater, III
                                                1515 W. Haddon Ave., Unit 309
                                                Chicago, IL 60642
                                                773 - 235 - 3080 - Home Office
                                                312 - 758 - 0307 - Mobile
                                                312 - 275 - 5757 – FAX
                                                slater@billslater.com
                                                United States of America

======================================

## INSTRUCTIONS FOR SERVICE

TO THE CLERK OF COURTS:

Please issue Summons together with a copy of the foregoing Complaint to be served upon the Defendants at the addresses as set forth in the above caption by <u>certified mail</u> _____, return receipt requested, and make the same returnable according to law.

Further, please issue Summonses, together with a copy of the foregoing Complaint, to be served upon the each of the Defendants Soren Spicknall, the Illinois Institute of Technology, and Microsoft Corporation at the following addresses:

| SOREN SPICKNALL | ILLINOIS INSTITUTE OF TECHNOLOGY, | MICROSOFT CORPORATION |
|---|---|---|
| c/o ASKWHAI, Inc. (at WeWork) 1 W Monroe St, 4th Floor Chicago, IL 60603 | c/o Dr. Alan Cramb, President 10 West 35th Street Chicago, IL 60616-3793 | c/o Satya Nadella, President & CEO One Microsoft Way Redmond, WA 98052-7329 Or Microsoft Midwest HQ Oakbrook Center 49 Oakbrook Center Oak Brook, IL 60523 |

by <u>certified mail</u> _____, return receipt requested, and make the same returnable according to law.